[No. 18904.    Department Two.    March 25, 1925.]

S. P. BEECHER, *Respondent*, v. PESHASTIN IRRIGATION
DISTRICT *et al., Appellants.*[1]

WATERS (92)—IRRIGATION DISTRICTS—ASSESSMENTS — METHOD —
EQUITABLE CREDITS—STATUTES.    An assessment of lands within an
irrigation district for the operation, repair and maintenance of a
ditch is erroneous where it fails to give an "equitable credit" to
lands that, prior to the organization of the district, had an adequate
supply of water from sources foreign to the district supply, as re-
quired by Rem. Comp. Stat., § 7418.

SAME (92)—ASSESSMENTS—COST OF CONSTRUCTION—POWERS OF
DISTRICT—STATUTES.    Under Rem. Comp. Stat., § 7454, authorizing
an annual assessment of lands within an irrigation district for the
operation, repair and maintenance of a ditch, it is erroneous to
include an assessment for the cost of "construction" work and ex-
tensions, required by §§ 7454 and 7458 to be raised by the levy of a
special assessment according to benefits.

Appeal from a judgment of the superior court for
Chelan county, Davidson, J., entered November 17,
1923, in favor of the plaintiff, in an action for equi-
table relief, tried to the court.    Affirmed.

*Corbin & Easton,* for appellants.

*Herman Howe* and *Carroll B. Graves,* for respond-
ent.

MACKINTOSH, J.—The respondent owns agricultural
land within the limits of the Peshastin irrigation dis-
trict.    The trial court hearing this action relieved him
from assessments levied by it for the years 1919, 1920,
1921 and 1922.    From the record it is gathered that the
Icicle Irrigation District and the Peshastin Irrigation
District are adjoining, and that the two districts have
entered into a contract by which the ditch of the for-
mer was enlarged and the latter's takes out of that
ditch a certain designated portion of the water, which

[1] Reported in 234 Pac. 4.

results in an increase of the amount of water avail- able to the residents of the Peshastin district; and the trial court having found that the contract between the two districts was proper and there being no appeal from that finding, it will be unnecessary to further consider this phase of the question.

The record shows that the appellant, while not the owner of any ditches, was organized for the purpose of taking over the maintenance and operation of several ditches in the district, and that from one of these ditches, to wit: the Tandy ditch, formerly known as the Peshastin Orchards ditch, the respondent has had a right for many years to take water; that in 1910, the respondent, by appropriation, also acquired the right to take water from Snow creek; that originally he took this water by means of a flume several miles in length, which he constructed, and that latterly he has established a new point of diversion by which he claims to have taken the water down the hillside from Snow creek to Ingalls creek, which creek flows into Peshastin creek, the latter creek flowing into the Tandy ditch.

The testimony is not clear as to the amount of water which the respondent receives from his Snow creek appropriation; some witnesses testifying that, from the new point of diversion, no water reaches the Tandy ditch.

Section 7454, Rem. Comp. Stat. [P. C. § 3232], provides for the assessment of lands within the irrigation district for the organization, care, operation, repair and maintenance of the ditch. Section 7418, Rem. Comp. Stat. [P. C. § 3198], provides that any lands in the district subject to assessment "shall be given equitable credit" for any partial or full water right which they may already have. This latter section seems to have been disregarded by the appellant in fixing the

assessments complained of. The trial court found as follows on this point:

"Defendant district was organized on the 26th of February, 1917, and plaintiff's lands were included in the district. At and prior to the time the defendant district was organized, plaintiff was irrigating his said lands from waters appropriated and taken from Peshastin creek and Snow creek through ditches from said creeks which conducted water on to said lands. The waters of Peshastin creek were so appropriated as early as 1909, and continuously used thereafter, and the waters of Snow creek were appropriated about 1912, and continuously used thereafter. The waters of Peshastin creek and Snow creek flow onto the land of plaintiff through what is known as the Tandy ditch. Plaintiff claims, and with some justification, that he has an adequate water supply for all of his said lands from said sources. I find that he has at least a very substantial and valuable water right. The defendant, Peshastin irrigation district, does not now and never has had any interest in or to the waters of Peshastin creek or Snow creek or any ditches leading therefrom on to the lands of the plaintiff. Whatever right plaintiff has to these ditches and the waters from these creeks is a private right in no way related to the Peshastin district."

Just what the "equitable credit" for the Snow creek rights amounts to cannot be determined from the record, but the appellant having failed to give credit therefor, the assessment made without such credit is erroneous.

The other ground upon which the assessments were properly held to be erroneous is that they cover not only the things provided for in § 7454, but cover cost of construction. Assessments for cost of construction cannot be levied in this manner, for §§ 7454 and 7458, Rem. Comp. Stat. [P. C. §§ 3232, 3236], provide that special assessments for the expense of the cost of the project and acquiring property, and the construction

and reconstruction and extension and betterment of works and expense of carrying out the purpose of the irrigation act, are to be paid out of the bond sales, except that special assessments may be levied for such purposes, provided such special assessment is first authorized by a majority vote of the electors of the district. There having been no election authorizing a special assessment, the appellant had no power to levy the assessment except for those purposes named in § 7454, which does not include construction.

The trial court found that

"The money raised by the district by these assessments, with the exception of a small percentage used to pay salaries of directors, secretaries, ditch tenders, etc., was practically all, or nearly all, paid out for construction work in the enlargement of the Icicle Canal. It is true the fund was called 'maintenance fund' but the money was paid out for construction work largely. This fund, during the several years it existed, was used indiscriminately for all purposes wherever and whenever needed, and no separate account of the expenditures was kept, and there is not testimony before the court from which the court can now determine a segregation."

The evidence fully sustains this finding, and the assessments for the years complained of, it is clearly indicated by the testimony, consist of amounts principally devoted to construction, so that on that account they are erroneous. From the testimony it is impossible to determine what portion of these assessments could properly have been made, under § 7454, and there is, therefore, no way by which this court can segregate the proper charges from the improper. The appellant's president on the stand testified that, in regard to this segregation, "we found that if we had thirty days time we perhaps could make them." With the record before us, they cannot be made.

Another contention is made by respondent that the assessments were not made according to "benefits accruing" to the land. This contention is unnecessary to notice at this time, as it is to be presumed that, in case of other assessments, the appellants will pursue the method sanctioned by this court in making assessments under the statute.

The judgment is affirmed.

TOLMAN, C. J., FULLERTON, HOLCOMB, and MITCHELL, JJ., concur.